## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANGELA COPELAND,

                Plaintiff,

v.                                       Case No. 13-CV-13136
                                     Honorable Denise Page Hood

BANK OF AMERICA CORPORATION;
BANK OF AMERICA, N.A.; GREEN
TREE SERVICING LLC; THE BANK
OF NEW YORK MELLON, f/k/a The
Bank of New York, as Trustee for the
Certificateholders of CWABS, Inc.
Asset-Backed Certificates Series 2005-AB4;
and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

                Defendants.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR REMAND [11], GRANTING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT [#4, 5], AND DISMISSING ACTION WITH PREJUDICE

      This matter comes before the Court challenging a foreclosure sale.  The Court

now considers Defendants Bank of America Corporation, Bank of America N.A.,

Mortgage Electronic Registration Systems, Incorporated, and The Bank of New York

Mellon's Motion to Dismiss, **[Docket No. 4, filed July 29, 2013]** Defendant Green

1

Tree Servicing LLC's Motion to Dismiss **[Docket No. 5, filed July 29, 2013]**, and Plaintiff's Motion to Remand **[Docket No. 11, filed August 21, 2013]**.  For the reasons stated below, Defendants' Motions to Dismiss are **GRANTED**.  Plaintiff's Motion for Remand is **DENIED**.  Additionally, this matter is **DISMISSED** with prejudice.

## I.    BACKGROUND

This matter involves a challenge to the foreclosure of a certain property located at 8518 Lenore Street, Dearborn Heights, Michigan, 48127.  **[Docket No. 1, Pg ID 13]** Plaintiff Angela Copeland executed an adjustable rate note in the amount of $160,000 with Michigan Fidelity Acceptance Corporation on April 29, 2005.  **[Docket No. 1, Pg ID 35]** On July 8, 2005, the mortgage was recorded with the Wayne County Register of Deeds.  **[Docket No. 1, Pg ID 35]** *See* Liber 43030, Page 461. The Note was secured by a mortgage. **[Docket No. 1, Pg ID 50]**

The mortgage notified Plaintiff that she, the borrower, agreed to "mortgage, warrant, grant, and convey to [Mortgage Electronic Registration Systems, Inc.] ("MERS") (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale" the property at issue in this case.  **[Docket No. 1, Pg ID 37]** On August 23, 2010, the mortgage was assigned to Defendant The Bank of New York Mellon f/k/a The Bank of New York Mellon as

2

Trustee for the Certificateholders of CWABS, Inc., Asset-Backed Certificates Series 2005-AB4.  **[Docket No. 4, Pg ID 145]** On August 23, 2010, this assignment was recorded with the Wayne County Register of Deeds. **[Id.]**  *See* Liber 48700, Page 1410.

Plaintiff subsequently defaulted on her mortgage payment obligations. Written notice dated August 1, 2012, was sent to Plaintiff notifying her that the home was going into foreclosure.  **[Docket No. 1, Pg ID 79]**  The notice included the reason for default, the amount due and owed, the contact information for the mortgage holder, servicer, and any agent designated by the holder or servicers, and a statement regarding Plaintiff's rights as a borrower. **[Id.]** Whether Plaintiff responded to this correspondence and requested a meeting to discuss her options for loan modification is in dispute.

The property was sold to Defendant The Bank of New York Lemon at Sheriff's Sale on November 8, 2012.  On November 27, 2012, a Sheriff's Deed on Mortgage Sale was duly recorded with the Wayne County Register of Deeds.  *See* Liber 50324, Page 155.  **[Docket No. 1, Pg ID 74]**  Pursuant to Michigan Law, M.C.L. § 600.3240(8), the period for Plaintiff to redeem the property began the date of sale and extended for six months, or until May 8, 2013.  Plaintiff failed to redeem the property

3

by this date.  On June 14, 2013, Defendant The Bank of New York Lemon ("BONY"), initiated eviction proceedings in the 20th District Court of Wayne County, Michigan.

On May 8, 2013, Plaintiff filed the instant Verified Complaint in the Third Circuit Court for Wayne County against Defendants Bank of America Corporation ("BOA")[1], Bank of America, N.A. ("BOA"), Green Tree Servicing LLC ("Green Tree"), BONY, and MERS.  In her Complaint, Plaintiff alleges: Lack of Standing to Foreclose - Against BONY (Count I); Violation of M.C.L. 600.3205a-c (Count II); Violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e) - Failure to Respond to QWR Against BOA and Green Tree (Count III); Violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(f)(2) - Against BOA and Green Tree (Count IV); and Violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(g)(1) - Against BOA (Count V).  As to Counts I, III, IV, and V, Plaintiff requests damages in the amount of "not less than $75,000."  As to Count I, Plaintiff also requests that his Court "deem any foreclosure proceedings void *ab nitio*."  As to Count II, Plaintiff requests that this Court "set aside the foreclosure and award Plaintiff the right to be reviewed for a loan modification."  On July 1, 2013, a Judgement was entered in the Third Circuit Court for Wayne County in BONY's

---

[1] The Court notes that for purposes of this Order, Defendants Bank of America Corporation and Bank of America, N.A., will be referred to as "BOA."

4

favor, wherein the court determined that BONY had the "right to recover possession of the property." **[Docket No. 4, Pg ID 117]** However, Defendants BOA and MERS were served with the Summons and Complaint on July 1, 2013 and removed the action to this Court on July 22, 2013.

## II.    ANALYSIS

There are various motions before the Court.  These include Defendants Bank of America Corporation, Bank of America N.A., Mortgage Electronic Registration Systems, Incorporated, and The Bank of New York Mellon's Motion to Dismiss, **[Docket No. 4]** and Defendant Green Tree Servicing LLC's Motion to Dismiss **[Docket No. 5]**.  Also before the Court is Plaintiff's Motion to Remand **[Docket No. 11]**.  Plaintiff's Motion for Remand will be addressed first.

### A.    Plaintiff's Motion for Remand

In her Motion for Remand, Plaintiff argues that Counts III, IV, and V of her Complaint "are not Federal Questions which grant Federal Courts Jurisdiction." Plaintiff contends that even if these counts confer Federal Question jurisdiction, the remaining counts are not Federal Questions and should be remanded.  Plaintiff next asserts that the *Rooker-Feldman* doctrine, named after court decisions in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), prohibits federal courts below the United States

Supreme Court from exercising "appellate jurisdiction over the decisions and/or proceedings of state courts, including claims that are 'inextricably intertwined' with issues decided in state court proceedings." *Exec. Arts Studio, Inc., v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004) (citations omitted). Lastly, Plaintiff claims that the amount in controversy does not exceed $75,000 because "even if she wins, she would still own the property subject to her mortgage . . . and it's present value is below $75,000." **[Docket No. 11, Pg ID 498-99]**

In response to Plaintiff's arguments, Defendants argue that Plaintiff "erroneously alleges" that Counts III, IV, and V are not federal questions. Defendants contend that the Court may assert supplemental jurisdiction over the remaining state law claims because "Plaintiff's entire complaint derives from a common nucleus of operative facts arising out of the foreclosure by advertisement following Plaintiff's default under the terms of her mortgage." **[Docket No. 14, Pg ID 534-35]** As to Plaintiff's contention that she is seeking an amount less than $75,000, Defendants point to the language of her Complaint which, as stated above, asks for "an amount no less than $75,000" on numerous claims for relief. Defendants also argue that Plaintiff's reliance on the *Rooker-Feldman* doctrine is misplaced because the doctrine stands for the proposition that "federal courts do not have appellate jurisdiction to review a state court judgment." **[Docket No. 14, Pg ID 536]**

6

The Court finds Plaintiff's argument, that Counts III, IV, and V of her Complaint are not "Federal Questions," without merit.  Count III of Plaintiff's Complaint arises under RESPA.  Counts IV and V allege violations of TILA.  Both RESPA and TILA are federal statutes.  The Court is satisfied that these particular actions "aris[e] under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and there is no dispute that this Court has original jurisdiction over these claims.  As to the remaining claims, the Court notes that, as discussed above, Plaintiff's Complaint explicitly states that she seeks "an amount no less than $75,000" in four of her five claims for relief.  Defendants argue that this request, coupled with complete diversity between the parties could be sufficient to provide diversity jurisdiction.  However, the Court need not reach the issue of diversity jurisdiction.

"A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996) (citing *Transcon. Leasing, Inc. v. Mich. Nat'l Bank of Detroit*, 738 F.2d 163, 166 (6th Cir. 1984)).  In deciding whether to exercise its supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  "When all federal

7

claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson*, 89 F.3d at 1254–55 (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). In this case, however, given the lack of merit of Plaintiff's state law claims, the Court believes that the interests of judicial economy and avoiding multiple lawsuits support exercising supplemental jurisdiction to dispose of the claims in a single proceeding.

Addressing Plaintiff's *Rooker-Feldman* argument, in *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983), the Supreme Court held that federal district courts lack subject matter jurisdiction to review state court proceedings, as such review is limited to the Supreme Court of the United States. *See Rooker v. Fid. Trust Co.*, 263 U.S. 413, 417 (1923). Prohibition of federal action pursuant to the *Rooker–Feldman* doctrine is limited to "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 281 (2005). The *Rooker-Feldman* doctrine only applies if the federal claim is "inextricably intertwined" with the state court judgment, meaning the federal claim only succeeds by declaring that the state court wrongly decided the issues before it.

8

*Loriz v. Connaughton*, 233 Fed.Appx. 469, 474 (6th Cir.2007). If, however, a plaintiff brings a claim independent of the state court's judgment, even though such a claim denies the state court's legal conclusion, then there is jurisdiction in the district court. *McCormick v. Braverman*, 451 F.3d 382, 392 (6th Cir.2006). The *Rooker–Feldman* doctrine applies only when the cause of the plaintiff's complaint is the state court judgment itself. *Id.* at 393.

Here, the Court notes that the causes of action before it arise from the foreclosure proceedings but not from the eviction proceedings that were before the 20th District Court of Wayne County. The Complaint before this Court was initially filed in the Third Circuit Court for Wayne County, not the 20th District Court and the eviction proceedings, in which a judgment has been entered, was not removed to this Court. The Court is unpersuaded by Plaintiff's contention that the *Rooker-Feldman* doctrine precludes this Court from determining this case on the merits. For the reasons discussed above, Plaintiff's Motion to Remand **[Docket No. 11]** is **DENIED**.

### B.  Defendants' Motions to Dismiss

Rule 12(b)(6) of the Rules of Civil Procedure provides for a motion to dismiss based on failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment]

9

to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]  Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Id.* at 555 (internal citations omitted).  Although not outright overruling the "notice pleading" requirement under Rule 8(a)(2) entirely, *Twombly* concluded that the "no set of facts" standard "is best forgotten as an incomplete negative gloss on an accepted pleading standard."  *Id.* at 563.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Id.* at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id.*

Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id.* at 557.  Such allegations are not to be discounted because they are "unrealistic or nonsensical," but rather because they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation.

*Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).  In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content" and the reasonable inferences from that content must be "plausibly suggestive" of a claim entitling a plaintiff to relief.  *Id.* at 683.  Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings.  *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). In assessing the facial sufficiency of the complaint, the Court must ordinarily do so without resort to matters outside the pleadings.  *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir .2010).  However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss."  *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-36 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n.1 (6th Cir. 2010).

The Court notes that even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."  *Commercial Money Ctr.*, 508 F.3d at 335-36.  Where plaintiff does not

11

refer directly to given documents in the pleadings, if those documents govern the plaintiff's rights and are necessarily incorporated by reference then the motion need not be converted to one for summary judgment. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997) (holding that plan documents could be incorporated and assessed without converting a motion to dismiss to a motion for summary judgment, even though the complaint referred only to the "plan" and not the accompanying documents). Additionally, "[a] court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579, 586 (6th Cir. 2010) (quoting *Commercial Money Ctr., Inc.*, 508 F.3d at 335-36).

### A.    BONY's Standing to Foreclose

In their Motions to Dismiss, Defendants[2] argue that Plaintiff's claim should fail because the 20th District Court's judgment bars her from re-litigating her claims of possession and Plaintiff lacks standing to challenge the assignment of her mortgage. In her Response to Defendants' Motions to Dismiss and again in her Supplemental

---

[2]

  Defendants BOA, MERS, and BONY filed a joint Motion to Dismiss. **[Docket No. 4]** Defendant Green Tree also filed a Motion to Dismiss. **[Docket No. 5]** For purposes of this Motion and because the arguments in both motions mirror one another, these motions will be referred to as "Defendants' Motions" and the arguments will be referred to as belonging to all "Defendants."

Brief, Plaintiff makes a lengthy argument regarding trusts.  Plaintiff argues that because the assignment from MERS to The Bank of New York Mellon f/k/a The Bank of New York Mellon as Trustee for the Certificateholders of CWABS, Inc., Asset-Backed Certificates Series 2005-AB4, was not properly assigned to the Trustee (as required by the closing date of the trust), the assignment was made in violation of the Pooling and Servicing Agreement ("PSA"), thereby nullifying the foreclosure because Plaintiff's mortgage and note were never placed in to the trust.  Plaintiff further agues that the failure of the mortgage to "properly transfer" into the trust with "proper endorsements" is a violation of the PSA and any assignment by the trust "would serve to transfer nothing, rendering any ensuing assignments a nullity."  **[Docket No. 23, Pg ID 1238]**  In essence, Plaintiff claims that the trust improperly added mortgages to its pool even after the specified closing date of the trust and the assignment was invalid.

Plaintiff's argument is unavailing.  Plaintiff cannot rely on alleged improprieties in the assignment of the mortgage, to which she was not a party as "[a] non-party cannot challenge a mortgage assignment."  *Carmack v. Bank of New York Mellon*, 2012 U.S. Dist. LEXIS 87470, at *6-7, 2012 WL 2389863 (citing *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010)).  To the extent that Plaintiff seeks to protect herself from having to

13

pay the same debt twice, Plaintiff is correct in that she "may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void," including nonassignability of the instrument, an assignee's lack of title, or a prior revocation of the assignment because as an obligor, she could not otherwise raise these defenses. *See Livonia Prop. Holdings, LLC*, 399 Fed.Appx. at 102. However, because Plaintiff cannot rightfully raise any of these defenses as BONY holds both the mortgage and the note and because, based on the information before the Court, she was never placed in a predicament that would require her to incur double payments on the same obligation, Plaintiff lacks standing to contest the validity of the assignment of her mortgage to the trust.

Even if the Court were to hold that Plaintiff in fact does have standing to bring her claim regarding the validity of the assignment, Count I still fails as a matter of law. The Michigan Supreme Court has made clear that, under Michigan law, a mortgage granted to MERS as nominee for lender and lender's successors and assigns, as was the case here, is a valid and assignable mortgage. *See Residential Funding Co., LLC v. Saurman*, 490 Mich. 909, 805 N.W.2d 183 (2011); see also Matthews v. Mortgage Electronic Registration Sys. Inc., No. 10-13740, 2011 WL 2560329 (E.D. Mich. Apr. 5, 2011).

14

It is clear, based on case law and the specific language of the mortgage documents, MERS had the ability to assign the mortgage, as it did here to the BONY Trust. *See McCann v. U.S. Bank, N.A.*, 873 F. Supp. 2d 823, 831 (E.D. Mich. 2012) ("MERS has the specific authority created by the mortgage to act as the mortgagee and the original lender's nominee. Consequently, MERS has statutory authority to enforce a mortgage granted to it as nominee for the lender, including assigning the mortgage."). The fact that, as Plaintiff argues, the formal assignment of the mortgage was done later is irrelevant, because an assignment may occur after a trust cut-off date. *See Smith v. Litton Loan Servicing, LP*, No. 10-14700, 2012 U.S. Dist. LEXIS 58656, at *4, 2012 WL 1444636 (E.D. Mich. Apr. 26, 2012). A review of the PSA in this case does not seem to nullify this assignment.

As to Plaintiff's "securitization" argument, "securitization" does not impact the foreclosure. This Court has previously rejected this very argument. *See Leone v. Citigroup, Inc.*, No. 12-10597, 2012 WL 1564698, at *4 (E.D. Mich. May 2, 2012) (stating that "[e]ven if the underlying indebtedness was securitized and transferred into a trust at some unspecified time or another, any such transfer has no impact on the validity of the mortgage, or on the power of the mortgagee to foreclose."). Further, the Court notes that MERS acts as nominee for both the originating lender and its successors and assigns and the mortgage and note are not split when the note

15

is sold.  *See, e.g., Golliday v. Chase Home Fin., LLC*, No. 1:10-CV-532, 2011 WL 4352554, at *8-9 (W.D. Mich. Aug. 23, 2011) (collecting cases).

Finally, even if Plaintiff's allegations or proof were sufficient to show some defect in the assignment, the Sixth Circuit has observed that "any defect in the written assignment of the mortgage would make no difference where both parties to the assignment ratified the assignment by their subsequent conduct in honoring its terms, and that [the plaintiff], as stranger to the assignment, lacked standing to challenge its validity."  *Tuille v. Am. Home Mortg. Servs., Inc.*, 483 F. App'x 132, 135 (6th Cir. 2012) (internal citations omitted).  Because there is no defect in regards to BONY Trust being able to foreclose on the subject property, Count I of Plaintiff's Complaint fails on the merits and is **DISMISSED** with prejudice.

### B.    Violation of M.C.L. 600.3205a-c

Plaintiff next alleges a violation of M.C.L. 600.3205a-c.  This claim fails because Plaintiff no longer has standing to assert an interest in the property as the redemption period has expired.  Under Michigan law, non-judicial foreclosures are governed by statute.  MICH. COMP. LAWS § 600.3204; *Senters v. Ottawa Sav. Bank, FSB*, 503 N.W.2d 639, 641 (Mich. 1993).  "Once the mortgagee elects to foreclose a mortgage by this method, the statute governs the prerequisites of the sale, notice of foreclosure and publication, mechanisms of the sale, and redemption."  *Id.*  After a

foreclosure sale, the mortgagor has a period of six months in which he may redeem the property. MICH. COMP. LAWS § 600.3240(8). Upon expiration of the redemption period, all rights and title vest in the purchaser of the foreclosed property. *See* MICH. COMP. LAWS § 600.3236. The former owner loses "all [his] right, title, and interest in and to the property at the expiration of [his] right of redemption," *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942), and can no longer assert a claim with respect to the property. *See Overton v. Mortg. Elec. Registration Sys., Inc.*, No. 284950, 2009 WL 1507342 (Mich. Ct. App. May 28, 2009) (unpublished).

Here, a sheriff's sale was held on November 8, 2012, and the redemption period expired on May 8, 2013. Plaintiff did not exercise her right of redemption and, as a result, all rights, interest, and title to the subject property vested in BONY. Plaintiff alleges that the foreclosure should be set aside because she timely responded to the notice and requested a loan modification, she would have qualified for a modification, and Defendant BONY denied her the opportunity, instead proceeding to foreclosure.

"[A] strong case of fraud or irregularity, or some peculiar exigency, [is required] to warrant setting a foreclosure sale aside." *United States v. Garno*, 974 F. Supp. 628, 633 (E.D. Mich. 1997); *see also Senters*, 503 N.W.2d at 643–44. Absent fraud or some other irregularity, the Court cannot equitably extend the redemption

17

period. *Overton*, 2009 WL 1507342, at *1 (quoting *Schulthies v. Barron*, 167 N.W.2d

784, 785 (Mich. Ct. App. 1969)). Allegations of fraud are subject to heightened

pleading requirements. *See* Fed. R. Civ. P. 9(b) (requiring "a party [to] state with

particularity the circumstances constituting fraud or mistake"); *Frank v. Dana Corp.*,

547 F.3d 564, 570 (6th Cir. 2008) ("At a minimum, [a plaintiff] must allege the time,

place and contents of the misrepresentations upon which [he or she] relied.").

Defendants have attached to their motion affidavits of publication that state that

notice of the foreclosure was posted in the Detroit Legal News on October 6, October

13, October 20, and October 27, 2012. **[Docket No. 1, Ex. Pg ID 76]** There is also

an affidavit which states that evidence of the sale was posted on September 14, 2012.

**[Docket No. 1, Ex. Pg ID 77]** There are also affidavits that state that the sale of the

property took place on November 8, 2012, and that written notice, pursuant to M.C.L.

600.3205, was sent to Plaintiff.

M.C.L. § 600.3205(c) provides the procedure for requesting a loan

modification. Subsection (1) provides that "[i]f a borrower . . . contact[s] a person

designated under section 3205a(1)(c) . . . , the person designated under section

3205a(1)(c) shall work with the borrower to determine whether the borrower qualifies

for a loan modification." M.C.L. § 600.3205(c)(1). If the borrower is eligible for loan

modification, the lender may not initiate foreclosure proceedings unless the lender has

18

offered the loan modification program and the borrower failed to accept the agreement within 14 days.  *Id.* at 600.3205(c)(7).

If foreclosure proceedings are initiated in violation of this statute, the borrower may ask the court to convert the foreclosure proceeding into a judicial foreclosure. *Id.* at 600.3205(c)(8).  However, section 600.3205(c) does not authorize a court to set aside the foreclosure.  *See Adams v. Wells Fargo Bank*, 2011 WL 3500990, at *4 (E.D. Mich. Aug. 10, 2011) (unpublished) (Section 600.3205(c) "allows specified borrowers to convert a foreclosure by advertisement to a judicial foreclosure; it does not allow those borrowers to avoid a foreclosure altogether or set aside a completed foreclosure"); *see also Awad v. Gen. Motors Acceptance Corp.*, 302692, 2012 WL 1415166, at *2 (Mich. Ct. App. Apr. 24, 2012) *appeal denied*, 493 Mich. 905, 823 N.W.2d 276 (2012) (unpublished) (describing that a plaintiff's suit does not toll the redemption period).  Remedy under the provision must be sought prior to the foreclosure sale.[3]

---

[3] *See Stein v. U.S. Bancorp*, 2011 U.S. Dist. Lexis 18357, 2011 WL 740537, at *27 (E.D. Mich. Feb. 24, 2011)

> The remedy available to the Steins under this provision . . . was one that they were required to specifically seek out prior to the consummation of the foreclosure by advertisement.  The provision allows certain borrowers to determine the type of foreclosure proceeding, not to avoid foreclosure altogether or set aside an already-completed

19

Even assuming that Defendants failed to meet with Plaintiff to discuss loan modification options, Plaintiff has failed to show the requisite prejudice required to set aside the foreclosure sale after it has already taken place.  *See Kim v. J.P. Morgan Chase Bank, N.A.*, 493 Mich. 98, 115 (2012) (explaining that a borrower must show that she would have been in a better position to preserve her interest in the property if not for the defect in compliance with the statute).  Plaintiff has not stated that she could have otherwise redeemed the property or, in the alternative, that she is currently in the financial position to pay off the debt owed and redeem the property if the foreclosure sale is deemed to have occurred wrongfully and determined without effect. The Court finds that Plaintiff's claim for violation of M.C.L. 600.3205a-c fails as a matter of law and Count II is **DISMISSED** with prejudice.

### C.    Violation of RESPA and TILA

Plaintiff's last three claims seek relief pursuant to RESPA and TILA. Concerning RESPA, Plaintiff argues that Defendants BOA and Green Tree violated 12 U.S.C. § 2605(e), which controls the servicing of mortgage loans and, more

foreclosure.  Moreover, there is no evidence that the Steins availed themselves of this provision while they retained title, rights, or an interest in the property.  Their failure to do so cannot constitute the type of fraud, accident, or mistake that would be required to set aside the foreclosure.

*Id.*

20

specifically, the duty of a loan servicer to respond to borrower inquiries.  Plaintiff

contends that she mailed Qualified Written Requests ("QWRs") to BOA and Green

Tree on "multiple occasions" and these Defendants failed to acknowledge receipt of

the request or respond.[4]  Plaintiff asserts that she had attempted to work with Bank of

America Corporation to obtain a loan modification but, in the midst of negotiations,[5]

Plaintiff was told that Bank of America, N.A. held her loan. **[Docket No. 1, Pg ID 23]**

After dealing with Bank of America, N.A., she was then told that Green Tree held her

loan.  Plaintiff claims that she then sent QWRs to all three parties to "understand who

was her lender, not holder and servicer of her mortgage and to dispute the debt

because it appeared that in several years of paying her mortgage bill failed to

decrease," but that these Defendants "failed to respond to [her] multiple requests

either at all or not in a timely manner."  **[Docket No. 1, Pg ID 24]**

---

[4]

   RESPA requires that a servicer acknowledge such an inquiry within 20 business
days of receiving the request (12 U.S.C. § 2605(e)(1)(A)), and substantively respond
within 60 business days, by either (a) correcting the account, providing a written
response explaining why the account is correct and providing contact information for
further assistance; or (b) providing a written response with the information requested
or an explanation for why the information is unavailable or cannot be obtained and
providing contact information for further assistance.  12 U.S.C. § 2605(e)(2).

[5]

  The Court notes that in the event that these loan modification negotiations occurred
after learning of the impending foreclosure sale, Plaintiff's statement is in direct
contradiction with her claim that she was never offered a loan modification meeting.

Viewing the Complaint in the light most favorable to the Plaintiff, assuming that she did in fact send letters to Defendants BOA and Green Tree and that those letters qualified as QWRs,[6] Plaintiff has not sufficiently alleged that she sustained any "actual damages" as a result of any failure to respond.  RESPA provides that if a servicer fails to respond to a proper QWR, the servicer can be held liable for "actual damages to the borrower as a result of the failure" as well as additional damages, not to exceed $2,000, in the case of a pattern and practice of noncompliance.  12 U.S.C. § 2605(f)(1).  "A claim for relief based upon a purported failure to respond to a QWR must be dismissed when the plaintiff fails to show damages resulting from the purported failure to respond." *Drew v. Kemp-Brooks*, 802 F. Supp. 2d 889, 897 (E.D. Mich. 2011).

Here, even if Plaintiff's letters were QWRs and Defendants BOA and Green Tree failed to respond to them, Plaintiff merely states that she has "suffered actual damages" without any specific information about the damages that she claims.[7]

---

[6]

To be considered a QWR, "the letter must identify the loan and 'include[ ] a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provide[ ] sufficient detail to the servicer regarding other information sought by the borrower.'" *Drew v*, 802 F. Supp. 2d at 897 (quoting 12 U.S.C. § 2605(e)(1) (B)).

[7]

Plaintiff claims an over-calculation and overpayment of interest on her loan, the costs of repairing her credit, the costs associated with removing the cloud on her property title, the *possibility* that multiple parties may seek to enforce the debt obligation

Plaintiff's allegation that BOA and Green Tree failed to respond, without any factual support to her allegations of damages, is not sufficient to state a RESPA claim. Plaintiff's RESPA claim, Count III is also **DISMISSED**.

As to Plaintiff's TILA claims, the Court is satisfied that Plaintiff's claims for damages must fail because they are time barred. TILA has a one-year statute of limitations. *See* Section 1640(e) states: "Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). "[T]he statute of limitations begins to run 'when the plaintiff has a complete and present cause of action' and thus 'can file suit and obtain relief.'" *Thielen v. GMAC Mortgage Corp.*, 671 F. Supp. 2d 947, 953 (E.D. Mich. 2009) (quoting *Wike v. Vertrue, Inc.*, 566 F.3d 590, 593 (6th Cir. 2009) (internal quotations omitted)). Plaintiff obtained her loan on April 29, 2005, did not file her complaint until May 8, 2013, and has not shown any reason for equitable tolling of the statute of limitation. Because this action was not commenced within one year, the statutory period has run and this claim is barred. *See Thielen*, 671 F. Supp. 2d at 953.

## III.   CONCLUSION

---

against her, that she *may* have been paying the wrong party, and that she is unable to determine if she sent her mortgage payments to the rightful party, as examples of actual damages caused by Defendants' alleged RESPA violation.

Given the Court's finding that it has jurisdiction to decide the claims in the present matter, as more fully discussed above,

**IT IS ORDERED** that Plaintiff's Motion to Remand **[Docket No.  11]** is **DENIED**.

Further, Plaintiff having not stated a plausible claim for relief pursuant to Counts I, III, III, IV, and V of her Complaint,

**IT IS ORDERED** that Defendants Bank of America Corporation, Bank of America N.A., Mortgage Electronic Registration Systems, Incorporated, and The Bank of New York Mellon's Motion to Dismiss **[Docket No. 4, filed July 29, 2013]** is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant Green Tree Servicing LLC's Motion to Dismiss **[Docket No. 5, filed July 29, 2013]** is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **DISMISSED** with prejudice.

**IT IS SO ORDERED**.


Dated:  March 31, 2014          S/Denise Page Hood
                                Denise Page Hood
                                United States District Judge

24

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2014, by electronic and/or ordinary mail.

<u>S/LaShawn R. Saulsberry</u>
Case Manager